IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CARIE L., ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 7:17-cv-163** |
| ) | |
| v. ) | |
| ) | **By: Hon. Robert S. Ballou** |
| NANCY A. BERRYHILL, ) | **United States Magistrate Judge** |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Carie L. ("Carie") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Carie argues that substantial evidence fails to support the administrative law judge's ("ALJ") decision and that the ALJ improperly discounted her credibility. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Carie's Motion for Summary Judgment (Dkt. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Carie failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

The current claim for disability represents Carie's second application for an award of disability benefits. Carie filed for SSI and DIB on March 18, 2010. R. 70. On March 22, 2012, ALJ Geraldine H. Page denied her claim for disability having determined that Carie retained the residual functional capacity ("RFC") to perform a range of light work, but that she could: (1) never crawl, be exposed to hazardous machinery, be exposed to unprotected heights, be exposed to excessively loud background noises, be on vibrating surfaces; and climb ladders, ropes, or scaffolds; (2) only occasionally balance, kneel, stoop, crouch, and climb ramps and stairs; (3) frequently handle objects; (4) avoid concentrated exposure to extreme temperatures, excess humidity, pollutants, and irritants; and (5) only work jobs that do not require driving or use of computer monitors for more than fifteen minutes at a time. R. 70–81.

Carie protectively filed applications for DIB on April 18, 2012 and SSI on April 30, 2012. R. 220, 227. Carie claimed that her disability began on April 15, 2010 on her DIB application and October 2, 2009 on her SSI application.[2] Id. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 141, 149, 156.

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Carie is precluded from claiming disability before March 23, 2012, the day following the unfavorable decision from her prior application.

On October 30, 2015, ALJ Page held an administrative hearing to consider Carie's disability claim. R. 36–66. Carie was represented by an attorney at the hearing, which included testimony from Carie and vocational expert Asheley Wells. Id.

On February 3, 2016, the ALJ entered her decision analyzing Carie's claim under the familiar five-step process,[3] and denying Carie's claim for disability. R. 16–30. The ALJ found that Carie suffered from the severe impairments of fibromyalgia, migraines and occipital neuralgia, obesity, a history of asthma, and a history of carpal tunnel syndrome. R. 19. The ALJ further found that Carie retained the RFC to perform a range of light work with the following limitations: (1) she can lift and carry twenty pounds occasionally and ten pounds frequently; (2) she can sit and stand/walk six hours in an eight-hour workday; (3) she can never crawl, work on vibrating surfaces, be exposed to hazardous machinery or unprotected heights, be exposed to extremely loud background noise, or climb ladders, ropes, or scaffolds; (4) she should avoid excess humidity, pulmonary irritants, and exposure to extreme temperatures; (5) she can occasionally balance, kneel, stoop, crouch, and climb ramps and stairs; (6) she can frequently, but not constantly, handle and finger; and (7) she should not use a computer monitor for more than fifteen minutes at a time and more than two hours per day. R. 21.

The ALJ determined that Carie could not return to her past relevant work as a customer complaint clerk, but that she could perform jobs that exist in significant numbers in the national

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

economy, such as cafeteria attendant, cashier, or rental clerk. R. 28–29. Thus, the ALJ concluded that Carie was not disabled. Id.

Carie appealed the ALJ's decision to the Appeals Council, but her request for review was denied. R. 1–3. This appeal followed.

## ANALYSIS

Carie challenges the ALJ's decision on two grounds, arguing that the RFC is unsupported by substantial evidence and that the ALJ improperly discounted her credibility.

**Medical History Prior to the Relevant Period**

Carie saw Henry R. Ivey, Jr., M.D., for frequent headaches in June 2009. R. 307. Dr. Ivey diagnosed Carie with migraines and advised her to continue her current medications. R. 309. Dr. Ivey explained that there were "no other new concerns and [Carie's] health status remains good." R. 307. Dr. Ivey explained that Carie's anxiety, depression, and asthma issues were stable, although he counseled her to stop smoking. R. 309. The next month, Carie followed up on her migraines, and Dr. Ivey explained that her migraines deteriorated and that they will continue on the current plan. R. 315.

Carie returned to Dr. Ivey in September 2009, reporting migraines that were unresponsive to oral medication and rest. R. 321. Dr. Ivey explained that Carie;s migraines caused nausea, photophobia, and phonophobia. Id. Dr. Ivey injected Carie with Nubain and Phenergan and continued her on her normal medications. R. 323.

Carie saw Dr. Ivey in October 2009 reporting migraines and neck pain. R. 326, 331, 335. Carie received Nubain and Phernergan injections and remained on the same medications for migraines. R. 328, 337. Dr. Ivey prescribed Vicoprofen for neck pain. R. 333.

In November 2009, Carie returned to Dr. Ivey for migraines and neck pain. R. 342, 345. Again, Carie received Nubain and Phernergan injections and remained on the same medications for migraines. R. 342. Dr. Ivey explained that Carie planned to go to the University of Virginia's medical center ("UVA") for a cervical nerve ablation for her neck pain. R. 345. Dr. Ivey recommended that Carie stop smoking, exercise three times per week, and eat healthier. R. 347. Later that month, Carie underwent a cervical nerve ablation, and followed-up with Dr. Ivey for persistent pain. R. 350. Dr. Ivey prescribed steroids, Decadron, and DepoMedrol, and continued Carie on her current medications. R. 352.

Carie saw Dr. Ivey in December 2009 for head and neck pain. R. 355. Carie informed Dr. Ivey that her physicians at UVA were considering alternative treatment options for her pain. Id. Dr. Ivey continued Carie on Lortab to combat her neck pain and migraines. R. 357.

In January and February 2010, Carie returned to Dr. Ivey, reporting persistent neck pain. R. 359, 364. Dr. Ivey noted that Carie was scheduled to receive a nerve stimulator at UVA. Id. Dr. Ivey continued Carie on her pain medications. R. 361, 366.

Carie returned to Dr. Ivey in May 2010, and explained that she did not have a nerve stimulator surgery in place due to a lack of health insurance. R. 373. Dr. Ivey stated that the physicians at UVA "felt that she had Occipital Neuralgia." Id. Dr. Ivey explained that Carie still reported pain in her head and neck, but noted that there were no other changes in her health, which overall remained "good." Id. Dr. Ivey continued Carie on medication for occipital neuralgia and migraines and referred her to pain management. R. 372.

Carie saw Dr. Ivey in July 2010, reporting syncopal episodes and pain in her head and neck. R. 378. Dr. Ivey prescribed Nubain and Phenergan for occipital neuralgia and migraines,

5

advised Carie to wear a holter monitor and counseled her not to drive. R. 377. Thereafter, Carie did not seek medical treatment for her disabling conditions for eleven months.

Carie followed up with Dr. Ivey in June 2011 for her head and neck pain. R. 388. Carie reported that UVA had no further treatment for her occipital neuralgia. Id. Dr. Ivey noted that "[t]here are no other new concerns and health status remains good." Id. Dr. Ivey continued Carie on her medications. R. 387.

Carie returned to Dr. Ivey in November 2011. R. 393. Dr. Ivey explained that Carie's migraines were better. R. 394. Dr. Ivey continued Carie on her current medications for migraines. Id.

Carie saw pain management specialist Chheaney Walter Ung, M.D., in January 2012. R. 400. Carie reported that she suffers from three migraines a week that can last from two to three days. Id. Dr. Ung explained that occipital nerve blocks, neurologic medications, and radiofrequency treatment have not worked and diagnosed Carie with chronic neck pain, migraine disorder, myofascial pain syndrome, and hyperreflexia. R. 400–02. Dr. Ung ordered X-rays and an MRI of Carie's cervical spine, increased her tizanidine, and prescribed Mobic. Id.

Carie returned to Dr. Ung in February 2012. R. 406. Carie explained that Mobic did not work. Id. Dr. Ung stated that the MRI was "essentially normal with loss of normal lordotic curvature." Id. Dr. Ung prescribed Zanaflex and Vicoprofen. R. 407. Dr. Ung also prescribed peripheral nerve stimulation therapy. Id.

**Medical History During the Relevant Period**

Carie was called in to Dr. Ung's office for a random pill count in April 2012. R. 412. Ashley Semones, RN, counted Carie's medication and found that Carie had recently been noncompliant in taking her medication. Id.

6

Carie followed-up with Dr. Ung in August 2012. R. 416. Carie reported a delay in finding a psychologist to evaluate her recently-failed pain patient profile test so that she could participate in a peripheral nerve therapy stimulator trial. Id.

Carie saw Kimberly A. Dulaney, M.D., in August 2012 and described "burning" or "shooting" pain resulting from occipital neuralgia and migraines since age seventeen. R. 550. Carie explained that computer monitors, phones, conversation, and concentration exacerbate her migraines. Id. Dr. Dulaney diagnosed Carie with occipital neuralgia, migraines, and asthma, id., but noted that she "suspect[s] fibromyalgia is contributing to her pain." R. 553. Dr. Dulaney noted that Carie had no respiratory problems. R. 551. Dr. Dulaney prescribed Topomax, which Carie explained had alleviated her migraines in the past. R. 550, 553.

In September 2012, Carie returned to Dr. Ung, reporting that Cymbalta was ineffective for pain relief. Id. Dr. Ung continued Carie on Vicoprofen and noted that he was awaiting psychological clearance to restart Topomax. Id. Later that month, Carie returned to Dr. Dulaney for a follow-up appointment, and her physical examination was stable. R. 563–66. Carie informed Dr. Dulaney that she received Topomax in the mail, but had not started it. R. 563.

In December 2012, Dr. Dulaney referred Carie to rheumatologist Adegbenga A. Bankole, M.D. R. 449. Carie complained of pain in her back, neck, head, shoulders, and knees. R. 450. Dr. Bankole noted that Carie's hands and joints were normal without arthritis, deformities, or swelling, but had some muscular tenderness. R. 453. Dr. Bankole explained that Carie's symptoms were likely caused by fibromyalgia, but cautioned that Carie's symptoms may be worsened by opiates. R. 450. Dr. Bankole instructed Carie to continue physical exercise and to consider aquatic therapy. R. 449.

Carie returned to Dr. Dulaney in January 2013, complaining of severe pain, diminished motivation, and difficulties with daily activities. R. 577. Her physical examination showed normal findings, and Dr. Dulaney continued Carie on her current medications. R. 583–84.

In February 2013, Carie returned to Dr. Bankole with complaints of migraines and pain in her knees, neck, shoulders, back, ankles, and hands. R. 470. Dr. Bankole found no rheumatological defects. R. 471. Dr. Bankole noted eighteen fibromyalgia tender points and minor joint pain in her hands, but noted that Carie's physical examination was otherwise normal. R. 471–74. Carie did not seek further medical attention for her conditions for eight months.

Carie returned to Dr. Dulaney in October 2013, reporting debilitating pain. R. 591. Dr. Dulaney found no deformities on physical examination, but found that Carie's skin was sensitive to light touch. R. 595. Carie reported that narcotic medication helped her pain, but stated that low Lyrica dosage did not help. R. 591. Dr. Dulaney continued Carie on her narcotic medications and increased the Lyrica dosage. R. 595.

In January 2014, Carie reported to Dr. Dulaney that she "hurt[s] all over" and feels "overwhelmed and completely exhausted with even small activities around the house." R. 605–06. Dr. Dulaney noted that Carie complained of severe pain upon light touch to her back muscles, but noted no objective deficiencies in her physical examination. R. 607–08. Dr. Dulaney explained that some of Carie's pain complaints are not typical of fibromyalgia. R. 609.

Dr. Bankole confirmed that Carie had "widespread muscle tenderness" consistent with fibromyalgia in June 2014, but noted that a physical examination was normal. R. 519. Carie returned to Dr. Bankole in September 2014, and stated that she stopped taking her pain medication because it was ineffective. R. 532. Dr. Bankole explained that Carie's physical examination remained normal and recommended routine exercise. R. 532, 534–35.

8

Carie returned to Dr. Dulaney in December 2014, complaining of worse pain and more frequent migraines. R. 636. Carie stated that she stopped taking Topomax because her migraines started to subside. Id. Carie complained that her knee swells "sometimes." R. 637. Dr. Dulaney prescribed hydrocodone and magnesium oxide for pain, restarted Topomax for migraines, and encouraged Carie to start a low-carbohydrate diet. R. 640. Carie did not seek medical intervention for her severe impairments for eight months.

In August 2015, Carie saw Dr. Dulaney for a check-up of her diagnoses. R. 687. Carie indicated she stopped taking Topomax due to its cost. Id. Carie stated that Topomax causes her to "zone out" at times, but Dr. Dulaney stated that it "really helped the headaches" and is "the best possible choice at this point." Id.; R. 691. Carie complained of joint pain in her hands, but Dr. Dulaney's normal physical findings caused her to doubt that this pain is due to inflammation. R. 691. Carie reported no problems with her asthma. R. 687.

At a follow-up appointment in September 2015, Carie told Dr. Dulaney that prednisone eliminated her joint pain but had no effect on the pain stemming from her fibromyalgia or her migraines. R. 703. Carie explained that she could not perform light chores around her home. Id. Carie had a normal physical examination, and Dr. Dulaney decided to restart Topomax once Carie could afford it, as it has helped her greatly in the past. R. 708. Dr. Dulaney continued Carie on all other medications. Id.

**Opinion Evidence**

On December 27, 2012, state agency medical consultant Joseph Duckwall, M.D., rendered an opinion at the initial level of administrative review, concluding that Carie was not disabled. R. 93–95. Dr. Duckwall explained that Carie (1) can frequently lift and carry ten pounds and occasionally lift and carry twenty pounds in an eight-hour workday; (2) can sit and

9

stand/walk for six hours in an eight-hour workday; (3) can never crawl or climb ladders, ropes, or scaffolds; (4) can occasionally balance, stoop, kneel, and climb ramps and stairs; and (5) must avoid concentrated exposure to noise, vibration, hazards, extreme cold and heat, and fumes, odors, dusts, gases, and poor ventilation. R. 93–94. State agency medical consultant Robert McGuffin, M.D., concurred with Dr. Duckwall's opinion on January 2, 2014 at the reconsideration level of administrative review. R. 119–21.

In October 2014, Dr. Dulaney wrote that:

> Carie . . . is completely disabled and is unable to perform work of any kind due to her history [sic] occipital neuralgia, migraine headaches, chronic pain and fibromyalgia. She is unable to even do many of the tasks that are needed around the home due to her medical issues, so certainly [sic] would not be able to do work outside the home. She has reached maximum medical improvement and is not expected to improve dramatically at any point in the near future.

R. 671.

William Humphries, M.D., conducted a consultative examination of Carie in November 2015. R. 673–84. Dr. Humphries noted that Carie's neck, back, shoulders, elbows, wrists, and hands were tender. R. 674. Dr. Humphries explained that Carie's upper extremity joints were not deformed, strength in her lower extremities was normal, and that her grip was near full strength. R. 675–75. Dr. Humphries stated that Carie (1) can lift and carry ten pounds frequently and twenty pounds occasionally; (2) sit for one hour at a time and two hours total in an eight-hour workday; (3) stand and walk for thirty minutes at a time and six hours total in an eight-hour workday; (4) frequently use both hands for everything except reaching; (5) does not require a cane to move; and (6) can perform normal daily activities like shopping by herself, using public transportation, and working with papers and files. R. 678–83.

**Substantial Evidence**

Carie asserts that substantial evidence does not support the RFC because the ALJ "never made specific findings regarding whether [her] impairments would cause her to experience frequent episodes of pain necessitating breaks or absences from work and how often these would occur and failed to properly assess the impact of [her] manipulative limitations on her ability to perform work related activities." Dkt. 15, at 16.

The ALJ's findings include a detailed summary and analysis of Carie's impairments, medical records, testimony, and opinion evidence. The ALJ thoroughly discussed all of Carie's medical records concerning her severe impairments, including that her physical examinations were normal, that certain medications—such as Topomax—were helpful, and that complaints of pain were unrelated to any physical deformity. R. 23–25. The ALJ discussed her conclusion that the objective medical evidence does not support the severity of symptoms Carie claims. R. 25–26.

The ALJ adequately addressed the opinion evidence in the record in according little weight to the opinions of Drs. Dulaney and Humphries while according some weight to the state agency medical consultants. The ALJ explained that Dr. Dulaney's determination that Carie is disabled is a finding that is reserved to the Commissioner, and that this opinion was devoid of supporting objective medical evidence. R. 26–27. The ALJ stated that Dr. Humphries's opinion was inconsistent with both the medical record and his own examination. R. 27. The ALJ found it significant that Dr. Humphries explained that Carie can only occasionally reach overhead bilaterally when he also found that she had no deformities in her upper extremity joints, had near-normal grip, and could move her fingers adequately. Id. The ALJ also explained that Dr. Humphries's restrictive opinion on Carie's ability to walk is weakened by his finding that she

does not need a cane to move. Id. The ALJ stated that Dr. Humphries's opinion was further contradicted by the findings of Carie's treating physician, Dr. Bankole, who determined that, besides muscle tenderness, her physical examinations were normal and stable. Id.

The ALJ explained that the less restrictive opinions of the state agency consultants were entitled to some weight because they are knowledgeable of the Social Security Regulations and because their opinions were generally consistent with the normal physical examinations that Drs. Dulaney and Bankole conducted. R. 26. However, the ALJ imposed further restrictions on those opinions to incorporate Carie's claimed sensitivity to computer monitors and loud noises. Id.

The ALJ discussed the previous ALJ decision, which found that Carie could perform a range of light work "with postural, manipulative, and environmental limitations." R. 27. The ALJ accorded the previous decision "some weight." Id. The ALJ explained that since that decision was entered, the medical record does not show significantly greater limitations. Id.; see Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999) (holding that the denial of a claimant's benefits based solely on a denial from an earlier time period is improper, and explaining that as the time period between the filing of the two claims increases, so do the odds that the claimant's condition has changed); Wheeler v. Colvin, No. 6:14-CV-34, 2016 WL 915301, at *7 (W.D. Va. Mar. 7, 2016) (explaining that an ALJ should give greater weight to a previous administrative finding when that period is close in time to the period being adjudicated). Likewise, Carie points to no evidence that was not before the ALJ in March 2012 that would command a finding of disability. The medical evidence of record since March 22, 2012 is substantially similar to the medical evidence submitted with the prior claim. Since March 22, 2012, there is evidence that Carie's migraines are exacerbated by computer screens and loud

noises. The ALJ restricted her accordingly in the RFC. The ALJ did not omit any evidence when crafting Carie's current RFC.

The ALJ has a duty of explanation, the fulfillment of which does not require the ALJ to recite every piece of evidence in the record. See Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied.") (quoting Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs, 137 F.3d 799, 803 (4th Cir. 1998)). All that is required is that the ALJ explain the findings in the decision such that a reviewing court is able to conduct meaningful judicial review. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion") (quoting (Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [Commissioner]. . . . The [Commissioner] must present [the court] with findings and determinations sufficiently articulated to permit meaningful judicial review.").

Here, the ALJ synthesized the relevant medical, testimonial, and opinion evidence into a physical RFC that explains the maximum amount of each work-related activity that Carie can perform. The fact that the ALJ did not address every conceivable work-related function is immaterial, as the basis of the ALJ's RFC determination is clear and no relevant evidence was omitted. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Because I am not left to guess about how the ALJ arrived at her conclusions, I find that the ALJ's RFC determination is supported by substantial evidence.

**Credibility**

Carie claims that the ALJ improperly discounted her credibility.[4]

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and the ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A claimant's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p.

The ALJ considered Carie's testimony that she experiences pain in her head and behind her eyes due to occipital neuralgia, frequent migraines that emanate from computer monitors or loud noises, muscle aches due to fibromyalgia, problems with her hands, and difficulties with sitting and standing for longer than a few minutes. R. 22, 25–26. The ALJ explained that the objective medical evidence does not correlate with the severity of symptoms Carie claims. R. 25. The ALJ explained that the objective medical evidence shows substantially normal physical findings, with the only consistent remarkable finding being muscle tenderness. R. 26. The ALJ

---

[4] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements (SSR 96-7p), and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16-3p. "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. However, "although SSR 16-3p eliminates the assessment of credibility, it still requires assessment of most of the same factors to be considered under SSR 96-7p." Kim v. Comm'r, Soc. Sec. Admin., No. 9:16-0823-BM, 2017 WL 2912414, at *4 n.10 (D.S.C. July 7, 2017).

Here, SSR 16-3p was issued after the ALJ's consideration of Carie's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's "credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

noted that the findings of Drs. Dulaney, Bankole, and Humphries show normal joints, no remarkable neurological findings, normal lower extremity strength, and normal hand movement and finger manipulation. Id. The ALJ concluded that the medical record is devoid of any objective findings corroborating Carie's subjective claims of pain and debility, and she therefore accorded little weight to Carie's testimony.

I must give great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). I find that the ALJ's determination of the consistency of Carie's statements regarding the severity of her symptoms in light of the objective medical evidence is supported by substantial evidence.

## **RECOMMENDED DISPOSITION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Carie's claim for benefits and in determining that her physical and mental impairments would not significantly limit her ability to do a range of medium work. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Carie's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: July 5, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge